**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **RENEE R. BERRY,** *pro se* | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No.: 1:08cv697** |
| | )                              **(JCC/TRJ)** |
| **CARLOS M. GUTIERREZ, Secretary,** | ) |
|   **U.S. Department of Commerce,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM IN SUPPORT OF THE DEFENDANT'S**
**MOTION TO VACATE THE ORDER GRANTING PLAINTIFF**
***IN FORMA PAUPERIS* STATUS OR TO DISMISS THE COMPLAINT**

For the following reasons, the Defendant respectfully moves this Court to vacate

the July 11, 2008 Order granting the Plaintiff *In Forma Pauperis* Status or to dismiss the

Plaintiff's Complaint, pursuant to 28 U.S.C. § 1915(e)(2).

**I.      INTRODUCTION**

The Plaintiff in this suit, Renee R. Berry ("Berry"), is a former Patent Examiner

with the U.S. Patent and Trademark Office.  On July 7, 2008, acting *pro se*, Berry filed

this employment discrimination case against the Secretary of Commerce, her former

employer. (Docket No. 1.)  On that same day, Berry moved the Court to allow her to

proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C.§ 1915.  (Docket No. 2.)  In

support of her request, Berry completed a two-page application, attesting under penalty of

perjury, to the income that she received during the previous twelve (12) months, as well

as to the assets that she owned.  Based on the information Berry provided, on July 11,

2008, this Court granted her IFP application.  (Docket No. 3.)

Two months prior to filing her Complaint and IFP application in this Court, on

May 5, 2008, the Plaintiff filed an appeal with the U.S. Court of Appeals for the Federal

Circuit stemming from a related employment dispute with the Defendant.  (See

Defendant's Exhibit Number ("Def.'s Exh. No.") 1, Case Summary and Case Details

sheet, Berry v. Department of Commerce, Federal Circuit Court of Appeals Case No.

2008-3235.)  As part of that appeal, Berry also filed a Motion and Declaration for Leave

to Proceed *In Forma Pauperis*, which was signed under penalty of perjury and submitted

to the Court on May 20, 2008.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application.)   In

that IFP application, the Plaintiff reported a monthly income of $3415 per month and

possession of real property totaling $750,000, amounts substantially greater than the

amounts reported to this Court six weeks later.  (*Id*.)  The Plaintiff's request for IFP status

was promptly denied by the Federal Circuit on May 29, 2008.  (Def.'s Exh. No. 2.)

On January 12, 2009, Berry filed a separate IFP application with this Court,

requesting *In Forma Pauperis* status in conjunction with her appeal to the U.S. Court of

Appeals for the Fourth Circuit of this Court's Order dismissing EDVA Civil Action

1:08cv459.  (Def.'s Exh. 7, Docket Sheet, Berry v. Gutierrez, Civil Action No 1:08cv459,

Motion and Affidavit for Permission to Appeal *In Forma Pauperis,* dated Jan. 12, 2009,

Docket No. 49.)   The income and assets reported by Berry in the Fourth Circuit

application also materially vary from the income and assets reported by Berry to the

Federal Circuit, and in some respects from the information reported to this Court in this

-2-

suit.  By Order dated Jan. 26, 2009, her motion for IFP status in the Fourth Circuit was granted.  (Def.'s Exh. 7, Docket No. 51, Order, Jan. 26, 2009 (JCC).)

A close review of the discrepancies among the three IFP applications Berry submitted to federal courts in the past year, in conjunction with public source information, establishes that Berry failed to fully disclose her assets and income to this Court.  Moreover, Berry's actual income and possession of assets at the time of the filing of her IFP application establish that Berry was not impoverished.  The Defendant respectfully submits that had Berry truthfully and accurately disclosed her assets and income to the Court, as she was required to do, the Court would not have approved her application for *in forma pauperis* status.  Accordingly, the Defendant moves this Court to revoke the Order granting her leave to proceed *in forma pauperis* and to order her to pay the filing fees in this case, or to dismiss her suit due to the "untrue" statements contained in her IFP application, pursuant to 28 U.S.C. § 1915(e)(2), and order such other relief as the Court deems appropriate.

## II.    RELEVANT FACTS

1.      Renee R. Berry was formerly employed by the U.S. Patent and Trademark Office as a Patent Examiner.  (Plaintiff's Complaint ("Pl.'s Compl.") , ¶ 8.)

2.      In 2005, Berry was removed from her position as a Patent Examiner for poor performance.  The agency later agreed to reinstate the Plaintiff to her position of Patent Examiner in August of 2006, and to provide her with certain forms of financial compensation, in exchange for Berry's agreement to settle three separate proceedings– a

union grievance and two administrative Equal Employment Opportunity (EEO) complaints.  In each of these proceedings, the Plaintiff alleged that she had been treated unfairly and/or unlawfully by the USPTO as part of her 2005 removal.[1]

3.      In November of 2007, approximately one year after her return to the USPTO as a Patent Examiner in August of 2006, Berry was again removed from employment for poor performance.  (Pl.'s Compl., ¶ 3.)

4.      Since 2006, Berry has zealously pursued her legal rights and remedies stemming from her removals from the USPTO in lawsuits, complaints and appeals filed in the U.S. District Court for the Eastern District of Virginia, the U.S. Court of Federal Claims, the U.S. Court of Appeals for the Fourth Circuit, the U.S. Court of Appeals for the Federal Circuit, the Merit Systems Protection Board, the Equal Employment Opportunity Commission and the Federal Labor Relations Authority.[2]

**A.      Plaintiff's Federal Circuit IFP Application dated May 20, 2008**

5.      On May 5, 2008, Berry filed suit in the U.S. Court of Appeals for the Federal Circuit, alleging that she was improperly denied a within grade increase (WIGI) by the Department of Commerce after her return to the USPTO in 2006.[3]

_____

[1] See generally Berry v. Gutierrez, Secretary, U.S. Dept. of Commerce, 587 F. Supp. 2d 717 (E.D.Va. 2008) (JCC).

[2] See footnote 1, above, at n. 1 and footnote 3, below.

[3] Berry v. Merit Systems Protection Board, 2009 WL 89668 (Fed. Cir. Jan. 15, 2009) (unpublished) (affirming the MSPB final order dismissing her claim that she was improperly denied a within grade increase (WIGI) by the Department of Commerce for lack of jurisdiction because the claim is subject to a collective bargaining agreement that

6.     On May 20, 2008, as part of the Federal Circuit appeal, Berry filed a detailed six (6) page Motion and Declaration for Leave to Proceed *In Forma Pauperis* with the U.S. Court of Appeals for the Federal Circuit which was signed under penalty of perjury.  (Def.'s Exh. 2, hereinafter "Berry's Fed. Cir. IFP Application".)

7.     In Berry's Fed. Cir. IFP Application, Berry reported the following monthly sources of income:

> Income from real property (Including rental income)     $2,115
> Unemployment payments:                                 $1,300

(Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 2.)

8.     The Plaintiff also attached to Fed. Cir. IFP application a statement from the Virginia Employment Commission (VEC), Office of Deputy's Determination, which verified that Berry was entitled to unemployment compensation benefits from the VEC beginning on Jan. 27, 2008, as a result of her discharge from employment with the Department of Commerce in November of 2007. (See Def.'s Exh. No. 2, last page, VEC Determination for Renee R. Berry, attached to Berry's Fed. Cir. IFP Application.)

9.     When directed to list her employment history for the previous two years in response to Question 2, in addition to her USPTO salary, Berry also listed income she received for performing contract work for Adept Services, Inc., of Smyrna, TN, of $1500 per case, and First Info Tech, of Arlington, VA, of $1300 per case.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 2.)

---

provides a grievance procedure to the exclusion of other remedies).

10.     In response to Question 5, "How much cash do you and your spouse[4] have?", Berry answered: $7,000.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 3.)

11.     When directed to list her bank accounts as part of Question 5, Berry reported that she had $7,000 in a checking account at the NASA Federal Credit Union, $100 in a savings account at the NASA Federal Credit Union, and $150 in a checking/savings account at the PTO Federal Credit Union.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 3.)

12.     In response to Question 6, when directed to report her "assets, and their values," Berry reported that she owned three homes:

(1) 2827 Otis St., N.E., with a value of $350,000;
(2) 47 Sheridan Street, N.E., with a value of $250,000; and
(3) 804 Quince Orchard, with a value of $150,000.

The Plaintiff also reported that she owned a  Jeep worth $20,000. (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 3.)

13.     In response to Question 9, regarding her monthly expenses, Berry listed total monthly expenses of $7,525 per month, including a "rent or home mortgage payment" of $4,426.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, pp. 4-5.)

14.     In response to Question 15, Berry listed her legal residence as 2827 Otis St., N.E., Washington, D.C.  20018.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p.

[4]The Plaintiff consistently reported no spouse.

6.)   Berry lists the same home address on the Complaint filed in this suit  (Pl.'s Compl.,

p. 5.) and on the Complaints Berry filed in EDVA Civil Action No. 1:08cv459 and the

U.S. Court of Federal Claims Case No. 08-330, as well as her appeals to the U.S. Court of

Appeals to the Federal Circuit (Case No. 2008-3235) and her appeal to the U.S. Court of

Appeals for the Fourth Circuit (Case No. 09-1084).   (See Def.'s Exh. Nos. 7, 10, and 1,

respectively.)

15.     According to publicly available tax records obtained from the District of

Columbia Taxpayer Service Center, the owner of 2827 Otis St, N.E., Washington, D.C. is

Bessie B. Berry[5] and the current value of the home is $582,790.  (Def.'s Exh. No. 3.)

16.     According to publicly available tax records obtained from the District of

Columbia Taxpayer Service Center, the owner of 47 Sheridan St, N.E., Washington, D.C.

is Renee R. Berry and the current value of the home is $356,940.  (Def.'s Exh. No. 4.)

17.     According to publicly available tax records obtained from the Maryland

Department of Assessments and Taxation, Montgomery County, the owner of 804 Quince

Orchard Blvd., Unit 201, Gaithersburg, MD 20878 is Renee R. Berry and the current

value of the home is $145,000.  (Def.'s Exh. No. 5.)

18.     Berry declared that the IFP application she signed and filed with the U.S.

Court of Appeal for the Federal Circuit on May 20, 2008, was "true and accurate" under

---

[5]Bessie B. Berry is the Plaintiff's mother.  An individual named Bessie Berry was also previously employed by the National Aeronautics and Space Administration ("NASA") at NASA Headquarters in Washington, D.C.

penalty of perjury.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 6.)

19.     Based on the information she provided, Berry's Application for IFP status in the Federal Circuit was denied on May 29, 2008.  (Def.'s Exh. No. 2, Berry's Fed. Cir. IFP Application, p. 6.)   Berry promptly paid the $450.00 filing fee.  (Def.'s Exh. No. 1, p. 1.)

### B.     Plaintiff's EDVA IFP Application dated July 7, 2008

20.     Less than two months later, on July 7, 2008, Berry filed this civil action in the EDVA.  On the same day, Berry filed an Application to Proceed Without Prepayment of Fees and Affidavit under penalty of perjury in this suit.  (Docket No. 2, Berry's EDVA IFP Application in this suit, attached as Def.'s Exh. 6.)

21.     On her EDVA IFP Application, in response to Question 2, "Are you currently employed?", Berry stated, "Yes," and added, "In the last 9 months, I have only earned 2800.  I have done part time contract work, but I am essentially unemployed." (Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 1.)

22.     In response to Question 3, which asks "In the past 12 twelve months have you received any money from any of the following sources?", Berry checked three "Yes" boxes for:

   a.     Business, profession or other self-employment
   b.     Rent payments, interest or dividend
   c.     Pensions, annuities or life insurance payments

Berry checked the "No" box, for the final option, "any other sources" of money.  (Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 1.)

23.     When asked to described "each source of money and state the amount received and what you expect you will continue to receive," Berry wrote:

> I got 2800 from contract work.  I get 1,415 for rent, but the mortgage is 1774. (So, I owe more each month.)  I got my TSP, but spent it all on bills. No remaining funds from TSP or retirement.

(Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 1.)

24.     When asked in Question 4, "Do you have **any** cash or checking or savings accounts?", Berry responded "Yes" and listed the total amount as $500.  (Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 2.)

25.     Question 5 asked Berry if she owned "any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value" and if so, to state its value.  Berry responded, "Yes," and stated in whole: "I own a Jeep and a house.  I have debt: credit card, mortgage, insurances: health and life insurance." (Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 2.)

26.     On her EDVA IFP Application, Berry did not report her receipt of weekly unemployment compensation benefits from the VEC during any portion of 2008. Likewise, Berry's EDVA IFP Application does not report her ownership as a landlord of real property in the District of Columbia and Maryland valued at over $400,000, or the full extent of her rental income.  Neither does Berry's EDVA IFP Application reference her possession of a bank account at the NASA Federal Credit Union, all of which she reported to the Federal Circuit under penalty of perjury six weeks earlier.

27.     Berry declared that the IFP application she signed and filed with the U.S.

District Court for the Eastern District of Virginia on July 7, 2008, was "true and correct" under penalty of perjury.  (Def.'s Exh. No. 6, Berry's EDVA IFP Application, p. 2.)

28.     Berry's Application to Proceed Without Prepayment of Fees and Affidavit in this EDVA suit was granted by this Court on July 11, 2008.  (Docket No. 3 (CMH).)

### C.     Plaintiff's Fourth Circuit IFP Application dated Jan. 12, 2009

29.     On January 12, 2009, Berry filed a Notice of Appeal in the U.S. District Court for the Eastern District of Virginia appealing the dismissal of Civil Action No. 1:08cv459, Berry v. Gutierrez.  (See Def.'s Exh. No. 7, Docket Sheet in EDVA Civil Action No. 1:08cv459, Docket No. 48.)[6]

30.     On the same date, Berry filed a five (5) page Motion and Affidavit for Permission to appeal *In Forma Pauperis* to the U.S. Court of Appeals for the Fourth Circuit in Civil Action No. 1:08cv459.  (See Def.'s Exh. No. 7, Docket No. 49; Berry's Fourth Circuit IFP Application attached as Def.'s Exh. No. 8.)

31.     In her Fourth Circuit IFP Application, in response to Question 1 which requested her to "estimate the average amount of money received [monthly]... during the past 12 months," Berry reported three sources of monthly income:

_____

[6]Berry filed Civil Action No. 1:08cv459 in the U.S. District Court for the Eastern District of Virginia, on May 9, 2008, alleging that the USPTO had breached the 2006 Settlement Agreement.  Berry v. Gutierrez, Secretary, U.S. Dept. of Commerce, 587 F. Supp. 2d 717 (E.D.Va. 2008) (JCC).  Berry did not file an application for IFP status in connection with EDVA Civil Action 1:08cv459, although she later moved for appointment of counsel and that motion was denied.  (*Id.*)  Berry's appeal of Civil Action 1:08cv459, which was docketed in the Fourth Circuit Court of Appeals as Case No. 09-1084, has been briefed and the parties are awaiting a decision.

-10-

Employment: $12,000[7]
Self-Employment: $1,800
Income From Rental Property: $2,000

(Def.'s Exh. No. 8, Berry's Fourth Circuit IFP Application, pp. 1-2.)

32.     In response to Question 2, requesting her employment history, Berry listed

three employers:

Upward Bound, from 10/08 - Present, [Gross monthly pay of] 1,800/yr.
KCC, from 11/08 - Present, [Gross monthly pay of] $1,200/mo.
Adept, Inc., on need basis 12/07-Present, varies from 0 to $1,500

(Def.'s Exh. No. 8, Berry's Fourth Circuit IFP Application, p. 2.)

33.     In response to Question 4, "How much cash do you and your spouse

have?", Berry responded "0."  When further asked to "state any money you or your

spouse have in bank accounts or in any other financial institution," Berry listed a PTO

Federal Credit Union checking and savings account with $500.  (Def.'s Exh. No. 8,

Berry's Fourth Circuit IFP Application, p. 2.)

34.     In response to Question 5, which requested that Berry "list the assets, and

their values, which you own," Berry listed one piece of real estate: "Home $500,000."

Berry also listed a 2005 Jeep Liberty valued at $8,000.  (Def.'s Exh. No. 8, Berry's

Fourth Circuit IFP Application, pp. 2-3.)

35.     In response to Question 8, Berry stated that her "average monthly expenses"

totaled approximately $8,004, including $5352 per month for "rent or home mortgage

---

[7]Possibly a typographical error meant to reflect $12,000/year or $1200/mo.

payment."  (Def.'s Exh. No. 8, Berry's Fourth Circuit IFP Application, pp. 3-4)

36.     Berry made three further statements: (1)  "I expect I will have to file

bankruptcy, because my bills exceed my income;" (2) I can't afford an attorney; and (3) I

do not have enough income to cover my living expenses. (Def.'s Exh. No. 8, Berry's

Fourth Circuit IFP Application, pp. 4-5.)

37.     In her Fourth Circuit IFP Application, Berry left blank the line on which to

report income in the past 12 months (Jan. 2008-Jan. 2009) from "Unemployment

payments"  (Def.'s Exh. No. 8, Berry's Fourth Circuit IFP Application, p. 2.).

38.     Regarding her assets, Berry reported in the Fourth Circuit IFP application

that she owned one "home" worth "$500,000" and a Jeep worth $8,000.  (*Id*. at pp. 2-3.)

Berry's Fourth Circuit IFP Application also omits any reference to a bank account at the

NASA Federal Credit Union.

39.     Berry declared that the IFP application she signed and filed with this Court

in connection with her appeal to the U.S. Court of Appeals for the Fourth Circuit on Jan.

12, 2009, was "true and correct" under penalty of perjury.  (Def.'s Exh. No. 6, Berry's

EDVA IFP Application, p. 2.)

40.     Berry's Application for Permission to Appeal IFP to the Fourth Circuit was

granted by this Court in an Order dated January 26, 2009.  (Def.'s Exh. No. 7, see Docket

No. 51 (Cacheris, J.))

41.     On October 30, 2008, the Plaintiff was deposed under oath in Equal

Employment Opportunity Commission ("EEOC") Case No. 570-2008-00493X, <u>Renee R.</u>

Berry v. Carlos M. Gutierrez, regarding another discrimination complaint the Plaintiff has

filed against the Secretary of Commerce (stemming from her removal for poor

performance in 2007). (See Def.'s Exh. No. 9, Berry Depo. (excerpts)).  In that

deposition, the Plaintiff testified that she possesses an undergraduate degree in chemistry,

as well as a law school degree.[8]  (Def.'s Exh. 9, Berry Depo., pp. 40, 46.) The Plaintiff

also possesses a Master's Degree in Education.  (Def's Exh. No. 9, Berry's Fed. Cir. IFP

Application, p. 6.)  Berry was represented by counsel in that deposition.  (*Id.*)

42.    At the October 30, 2008, deposition, Berry described herself by stating,

"I'm a chemist, I'm an educator, and I'm a lawyer[9]...."  (Def.'s Exh. No. 9, Berry Depo.,

p. 46.)   Berry testified that her duties as a patent examiner involved interpreting "statutes

of patent law."  (Def.'s Exh. No. 9, Berry Depo., p. 40.)

43.    At the same deposition on Oct. 30, 2008, the Plaintiff testified that since her

removal from the U.S. Patent & Trademark Office in November of 2007, she had been

employed as a chemistry teacher for Howard University and a contract EEO investigator

for the U.S. Department of Justice.  (Def.'s Exh. 9, Berry Depo, pp. 9-11.)

44.    Berry does not reported income from Howard University or any other

---

[8]While the Plaintiff was employed by USPTO, she received tuition assistance from
the Defendant  to attend law school and earned a law degree.  (Def.'s Exh. No. 9,
Deposition of Renee R. Berry, Oct. 30, 2008, EEOC No. 570-2008-00493X, pp. 40, 46.)

[9]The Plaintiff, however, has not yet passed a bar exam.  (Def.'s Exh. 2, Berry
Depo, p. 46.)

school on any of three IFP applications that she filed with federal courts in the past year.

45.     According to documents maintained by the U.S. Department of Commerce, USPTO, and submitted to the Virginia Employment Commission for fiscal year 2008, Berry received twenty-six (26) weeks of unemployment compensation benefits during 2008.  (Def.'s Exh. No. 13, Status of R. Berry Unemployment Claim.)   Specifically, Berry received $363.00 each week from Feb. 9, 2008 through August 16, 2008, for a monthly average of $1452.00 (with the exception of two weeks in April 2008).  (*Id.*)

46.     On May 5, 2008, the date that Berry filed her Complaint in the U.S. Court of Federal Claims, Civil Action No. 1:08cv-330 (LB), Berry paid a filing fee of $250.  (Def.'s Exh. No.10, Docket No. 1.)

47.     On May 9, 2008, the date that Berry filed her Complaint in the U.S. District Court for the Eastern District of Virginia, Civil Action 1:08cv459 (JCC), Berry paid a filing fee of $350.00.  (Def.'s Exh. No. 7, Docket No. 1.)

48.     As a result of this Court's grant of IFP status to the Plaintiff in this suit in July of 2008, Berry was not required to pay this Court's filing fee of $350.00 in this case.

49.     As a result of this Court's January 2009 grant of IFP status to the Plaintiff in her appeal to the Fourth Circuit of the dismissal of EDVA Civil Action 1:08cv459, the Plaintiff was not required to pay the Fourth Circuit's filing fee of $455.

II.      **ARGUMENT**

A.      **Proceedings *In Forma Pauperis***

A federal court may authorize a person to commence and prosecute a civil action without payment of fees if that person submits an affidavit containing a statement of her assets and demonstrates that she is unable to pay the required fees.  See 28 U.S.C. § 1915(a)(1).

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceedings, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1).  The scope of the statute is not limited to prisoners.  It was intended to benefit those too poor to pay or give security for costs of litigation.  Neitzke v. Williams, 490 U.S. 319, 324 (1989).  Moreover, a plaintiff is not required to prove that she is "absolutely destitute to enjoy the benefit of the statute." Adkins v. E.I. Du Pont de Nemours & Co., 335 U.S. 331, 339 (1948).

> The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support.  Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution.

Adkins, 335 U.S. at 339-340.  Accordingly, the individual seeking IFP certification is required by statute to submit an affidavit of indigence or poverty that sufficiently demonstrates her inability to both provide herself with the necessities of life and pay the

costs of litigation. 28 U.S.C. §1915(a); <u>Adkins</u>, 335 U.S. at 339-40.

In the affidavit, the applicant must swear that the information submitted to the court is "true and accurate" under penalty of perjury.  "One who makes this affidavit exposes himself 'to the pains of perjury in a case of bad faith.'" <u>Adkins</u>, 335 U.S. at 338, quoting <u>Pothier v. Rodman</u>, 261 U.S. 307, 309 (1923).  "This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits." *Id*.  Furthermore, the statute provides other sanctions to the court to protect against false affidavits.  Prior to 1996, a district court was authorized to dismiss an action if the court determined that the allegation of poverty was "untrue." *Id*.  The discretion to exercise that authority was vested squarely with the court in former section 1915(d). <u>See</u>, <u>e.g.</u>, <u>Cochran v. Morris</u>, 73 F.3d 1310, 1315 (4th Cir. 1996) (holding that *sua sponte* discretionary dismissals pursuant to former Section 1915(d) are "freely permitted" if a claim of poverty in an IFP application is untrue); and <u>Mathis v. New York Life Insurance Co.</u>, 133 F.3d 546 (7th Cir. 1998) (per curiam) (upholding the district court's discretionary dismissal per 28 U.S.C. 1915(d) of the complaint as a sanction for plaintiff's "attempt to deceive the court" due to false statements on his 1995 IFP application).

**B.    The Prisoner Litigation Reform Act of 1996**

In 1996, Congress made significant changes to 28 U.S.C. § 1915 in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134 §§ 801-10, 110 Stat. 1321 (1996). <u>Pelmer v. Dean</u>, 562 F. Supp. 2d 1006, 1007 (N.D.Ill. 2008) (Section 1915(e)(2) was

"enacted as part of a general overhaul of Section 1915 in 1996.").  See also <u>Hurt v. Social Security Administration</u>, 544 F.3d 308 (D.C. Cir. 2008) (citing some of the 1996 amendments to 28 U.S.C. § 1915 contained in the PLRA).  Among other changes, former section 1915(d) was replaced by new section 1915(e)(2).  The amendments replaced the word "**may**" in what had previously been section 1915(d) with the word "**shall**" in the current statute.  <u>Pelmer</u>, 562 F. Supp. 2d at 1007.  Accordingly, the current statute states:

> [T]he court shall dismiss the case at any time if the court determines that —
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal –
> (I) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune
>        from such relief.

28 U.S.C. § 1915(e)(2).   The effect of this change was to transform the district court's discretionary authority to dismiss into a mandate for dismissal in certain circumstances.  <u>See</u>, <u>e.g.</u>, <u>Hinton v. Hearns</u>, — F. Supp. 2d — , 2008 WL 2662974 (E.D.Va. July 2, 2008) (JCC) (attached as Def.'s Exh. No. 12) ("In reviewing a complaint pursuant to § 1915A and [current]§ 1915, a court ***must*** dismiss any such complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted.") (emphasis added).

Stated alternatively, prior to 1996, the district court possessed the discretion to dismiss a case due to the plaintiff's "untrue" statements on an IFP application or false declarations of poverty.  However, under current Section 1915, "the court shall dismiss the case" if the court makes this determination.  28 U.S.C. § 1915(e)(2)(A).  "That

-17-

mandate is unambiguous."  Pelmer, 562 F. Supp. 2d at 1008 citing Thomas v. Gen.

Motors Acceptance Corp., 288 F.3d 305, 307 (7th Cir. 2002).

> Because the allegation of poverty was false, the suit had to be dismissed;
> the judge had no choice.  28 U.S.C. § 1915(e)(2)(A).  The only question is
> whether the judge abused his discretion in making the dismissal with
> prejudice.  By doing this, he made dismissal a sanction for the filing of a
> false application.  His authority to impose such a sanction in an appropriate
> case is beyond question.

Thomas, 288 F.3d at 1008 (citations omitted).

The facts of Pelmer are instructive.  In Pelmer, Plaintiff's counsel argued that

dismissal was only permissible where the court found that "Plaintiff's omissions were

made in bad faith rather than through an innocent oversight."  Pelmer, 288 F.3d at 1008.

The district rejected this argument and resisted the temptation to engage in "judicial

legislation" by reading a "bad faith" requirement into the statute.  (Id.)  Instead, the court

noted that had the Plaintiff "made the proper disclosure as he was obligated to do, this

Court would unquestionably have denied him in forma pauperis status – and it certainly

would not have given him the benefit of free legal services."  (Id.)  Significantly, the

Pelmer court's conclusion was not altered by its realization that, in an employment

discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964, a

dismissal without prejudice acts as a dismissal with prejudice, due to the statutory time

limits for filing suit in federal court.   Pelmer, 562 F. Supp. 2d at 1008.

Closer to home, in Oquendo v. Geren, 594 F. Supp. 2d 9 (D.C. D.C. Jan. 27, 2009)

the district court dismissed the plaintiffs' complaint pursuant to 28 U.S.C. §

1915(e)(2)(A) after it determined that "at least in some substantial part" the applications of poverty submitted by the plaintiffs were untrue.  "Because the statute uses the command "shall," dismissal is mandatory in the face of untrue allegations of po verty."  Oquendo, 594 F .Supp. 2d at 11 (citations omitted).  The Oquendo court reasoned that "[w]here the applicant has intentionally misled the court, the dismissal may be with prejudice."  Oquendo, 594 F .Supp. 2d at 11.

Similarly, in Portis v. Geren, Civil Action No. 1:06cv1510, 2007 WL 2461799 (M.D. Pa. Aug. 23, 2007) (unpublished) (attached as Def.'s Exh. No. 11), the district court held that where the plaintiff failed to disclose income and assets to the court at the time she filed her suit and sought IFP status, she materially misrepresented her financial condition and her declaration of poverty was untrue.  Therefore, the court reasoned, "the action must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(A)."  Portis, slip at 2 (referring to "the mandatory language" of dismissal contained in the current statute).  See also Mullins v. Hallmark Data Systems, 511 F. Supp. 2d 928 (N.D.Ill. 2007) (The defendant's motion to dismiss per 28 U.S.C. § 1915(e)(2)(A) was granted by the district court after it determined that the plaintiff made untrue statements in her IFP application where she omitted information regarding $20,000 in salary and interests in certain real property).  Like the plaintiff in this suit, the plaintiffs in Pelmer, Oquendo, Portis and Mullins all brought suit against their current or former employers for employment discrimination.

### C.   Omissions in Berry's July 7, 2008 IFP Application to the EDVA

In her July 7, 2008, *in forma pauperis* application submitted to this Court, Berry

failed to fully disclose the extent of her income for the previous twelve (12)  months and

failed to fully disclose the extent of her real property holdings.  For instance:

(1)   In response to question number 3 regarding her sources of income for the past 12 months [July 2007-2008], Berry omitted any reference to her weekly  receipt of unemployment compensation benefits from the VEC. (Def.'s Exh. 13.)  Six weeks earlier in her IFP application to the Federal Circuit, however, Berry disclosed that she was receiving unemployment compensation benefits from the VEC and attached her Notice of Eligibility for Benefits.[10]  (Def.'s Exh. No. 2.)

(2)   In the EDVA IFP application, Berry stated that she received $1,415 in rental income (presumably monthly).  (Def.'s Exh. No. 6.)  Six weeks earlier, in the Fed. Cir. IFP Application, Berry stated that she received $2,115 per month in rental income.  (Def.'s Exh. No. 2.)  Six months later, in her 4th Cir. IFP Application, Berry again stated that she received an average of $2,000 per month in rental income during 2008.  (Def.'s Exh. No. 8.)

(3)   In the EDVA IFP application, Berry stated that the total value of her "cash or checking or savings accounts" was approximately $500.  (Def.'s Exh. No. 6.)  Six weeks earlier, in her Fed. Cir. IFP application, Berry stated that she possessed over $7,000 in cash or checking or savings accounts.  (Def.'s Exh. No. 2.)

(4)   In response to question 5 on the EDVA IFP application, Berry stated that she owned "a house" and omitted any reference to its market value, despite being directed to state the value.  (Def.'s Exh. No. 6.)  Six weeks earlier, in the Fed. Cir. IFP Application, Berry stated that she owned three homes, with a total market value of $750,000.  (Def.'s Exh. No. 2.)  Current property tax records establish Berry owns (at least) two pieces of real property worth approximately $400,000, from which she receives monthly rental income, and lives in a third property.  (Def.'s Exh. Nos. 3-5.)

---

[10]Berry was eligible for 26 weeks of VEC benefits, beginning Jan. 27, 2008.

These examples represent a sampling of the omissions and misstatements that Berry made in her EDVA IFP Application and are not intended to be an exhaustive list.

Had Berry truthfully and accurately disclosed to this Court in July of 2008 her income (approximately $3,415 per month) and real estate holdings (at least $400,000 in total value), as she disclosed to the Federal Circuit, it is unlikely that this Court would have deemed her impoverished and granted her application to proceed *in forma pauperis*. Berry received over $1400 in unemployment compensation benefits from the VEC in June, July and Ausgust of 2008, in additional to her rental income.  With no dependents to support, this level of income and asset possession is inconsistent with a finding of poverty, regardless of whether bills exceeded her income each month.

In addition, Berry's IFP application to this Court followed the submission and denial of her application for IFP status in the Federal Circuit by approximately six weeks. That short period of time, combined with the exhibits attached to this memorandum, support a finding that Berry's fortunes did not decline precipitously during that six week time period.  In fact, due to her monthly income level, she was able to pay over $1,000 in filing fees in three federal courts in May of 2008, just two months before filing her IFP application in this suit: Federal Circuit filing fee of $450; EDVA filing fee in Civil Action 1:08cv459 of $350; and a Court of Federal Claims filing fee of $250.  (Def.'s Exh. Nos., 1, 7 and 10, respectively.)

While the EDVA IFP application was the shortest of the three IFP applications that Berry submitted to federal courts in 2008, all of the forms are designed for use by non-

lawyers and warn the applicant that the information is submitted to the court under penalty of perjury.  Ms. Berry, as a self-described "lawyer," chemist and educator, would reasonably have known that she was required to fully and truthfully disclose her assets and income in order for this Court to make a fair and just determination of her eligibility for IFP status.   Moreover, where Berry was forthcoming with her finances in her first IFP application, which was unsuccessful, she can hardly argue that she was unaware of the importance of full disclosure.

## III.    CONCLUSION

Within six weeks of being denied IFP status by the Federal Circuit, the Plaintiff filed an IFP application in this Court which contained material omissions and misstatements regarding the nature and extent of her income and assets.  Rather than an innocent oversight, her actions appear to have been calculated to qualify her for a benefit to which she was not entitled: a public subsidy for her litigation.  Her false or fraudulent invocation of the statute's benefits should not pass without consequence.

For all of the reasons stated above, therefore, the Defendant respectfully requests that this Court vacate its July 11, 2008 Order granting the Plaintiff *in forma pauperis* status in this suit and order the Plaintiff to pay the filing fees in this suit, or to dismiss the Plaintiff's Complaint pursuant to 28 U.S.C. § 1915.

The Defendant also requests that his obligation to answer, move, or otherwise respond to this suit be stayed pending resolution of the Plaintiff's IFP status and the Defendant's Motion to Vacate or Dismiss.

-22-

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY


By: _____/s/_____
Leslie B. McClendon
Assistant United States Attorney
Virginia Bar No. 43709
Attorney for Defendant
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:     (703) 299-3831
Fax:                (703) 299-3983
Email:           Leslie.McClendon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2009, I will electronically file the

foregoing **Memorandum in Support of the Defendant's Motion to Vacate the In**

**Forma Pauperis Order or in the Alternative to Dismiss the Complaint**, and attached

exhibits, with the Clerk of the Court using the CM/ECF system, and that an exact and true

copy will be served by United States mail, first class postage prepaid, addressed to the

following *pro se* Plaintiff:

Renee R. Berry
2827 Otis Street, NE
Washington, D.C. 20018

By: _____/s/_____
Leslie B. McClendon
Assistant United States Attorney
Virginia Bar No. 43709
Attorney for Defendant
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia  22314
Telephone:    (703) 299-3831
Fax:             (703) 299-3983
Email: Leslie.McClendon@usdoj.gov