0001

1    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

2         Washington Field Office

3    RENEE R. BERRY,

4    Complainant      EEOC No. 570-2008-00493X

5    v.              Agency No. 07-56-37

6    CARLOS M. GUTIERREZ,

7    SECRETARY, UNITED STATES

8    DEPARTMENT OF COMMERCE,

9    UNITED STATES PATENT &

10   TRADEMARK OFFICE,

11   Agency

12   _____X

13        400 Dulany Street, 7th Floor

14        Alexandria, Virginia  22314

15           9:43 a.m.

16

17

18

19

20       DEPOSITION OF THE COMPLAINANT,

21          RENEE R. BERRY

22

DEFENDANT'S EXHIBIT 9
1:08cv697

0002

1  APPEARANCES:

2  Law Office Derrick G. Hamlin P.C.

3     Attorney for Complainant

4     10 North Calvert Street, Suite 506

5     Baltimore, MD 21202

6     (410) 637-3001

7     Derrick G. Hamlin, Esq.

8

9  United States Patent & Trademark Office

10  Office of the General Counsel

11  Office of General Law

12    Attorneys for Agency

13    P.O. Box 1450

14    Alexandria, VA 22313-1450

15    (571) 272-6421

16    Kyu S. Lee, Esq.

17    Sonya Y. Pass, Esq.

18

19    Also Present:

20    Shirley Hassan, paralegal

21

22

0003

```
 1              INDEX

 2  WITNESS                        PAGE

 3  RENEE R. BERRY

 4  Examination by Mr. Lee           4

 5  Examination by Mr. Hamlin      122

 6

 7           EXHIBITS

 8  EXHIBIT NO.                 PAGE MARKED

 9  1   E-mail string regarding schedule
10      for Tech Expo                87
11
12
13
14
15
16
17
18
19
20
21
22  Exhibit 1 was attached by counsel.
```

0004

1         P R O C E E D I N G S

2                 9:43 a.m.

3 Whereupon,

4        RENEE R. BERRY,

5 the complainant, was called for examination by counsel

6 for the agency, and having been duly sworn, was examined

7 and testified as follows:

8     EXAMINATION BY COUNSEL FOR THE AGENCY

9 BY MR. LEE:

10    Q  Good morning, Ms. Berry. How are you?

11    A  I'm fine.

12    Q  My name is Kyu Lee, and this is Sonya

13 Pass and also our paralegal Shirley Hassan, and we're

14 here today for the purpose of taking your deposition.

15       Have you given a deposition before?

16    A  Yes.

17    Q  Can you describe the circumstances, how

18 many times have you given a deposition?

19    A  I think I gave a deposition only once

20 prior to this for a termination in 2006.

21    Q  Okay. Would you say you're familiar with

22 the deposition process?

0009

1      Q   The only caveat I would give is if I'm in
2  the middle of asking a question, I would ask that we
3  continue with that line of questioning, and you provide
4  your answer before we take the break.
5      Do you understand that?
6      A   Yes.
7      Q   Okay. Are you currently employed?
8      A   Currently I do contract work here and
9  there.
10     Q   What type of contract work?
11     A   I do investigations, and I work for
12 Howard University's Upward Bound program.
13     Q   The contract you work is not for Howard,
14 correct?
15     A   Well, that's sort of a contract position
16 to it. I teach for Howard.
17     Q   Okay. When you do these investigations,
18 you said that's contract work?
19     A   Yes.
20     Q   Who is -- who are you providing that
21 service for? Is it a company?
22     A   Yes. Government, basically. Contract

0010

1   with the government.

2       Q   Which government?

3       A   Which area?

4       Q   Which government agency?

5       A   USDA, Department of Justice.

6       Q   Okay. What's the nature of the
7   investigations that you do?

8       A   I investigate complaints.

9       Q   EEO complaints?

10      A   Yes.

11      Q   I'm sorry. I didn't mean to cut you off
12  there. You said yes to EEO complaints, and you
13  indicated -- it seemed like you were going to
14  indicate --

15      A   I don't remember. You cut me off. I
16  forgot whatever I was about to say.

17      Q   Okay. But you investigate EEO
18  complaints; is that correct?

19      A   Yes, I have.

20      Q   Is there any other areas that you
21  investigate aside from Equal Employment Opportunity
22  issues?

0011

1    A    No.

2    Q    Okay. Could you -- I assume that this

3  is -- that your investigation work is something that you

4  did only subsequent to your employment at PTO; is that

5  correct?

6    A    Yes. After I left the PTO, right, yes.

7    Q    Okay.

8    A    Same for Howard University, after I left.

9    Q    Okay. How many investigations would you

10  say you've done?

11    A    Just a few.

12    Q    Less than five?

13    A    Yes. Maybe. I can't remember.

14    Q    Would it be less than ten, then?

15    A    Less than ten.

16    Q    And could you just briefly describe what

17  you do for Howard University.

18    A    I teach chemistry.

19    Q    To Howard University students?

20    A    They are high school students.

21    Q    Okay. And both the contract work and the

22  Howard University work are paid positions; is that

0012

1  correct?

2      A  I'm paid for my time, yes.

3      Q  Okay. Have there been any other sources

4  of income or employment since your employment with PTO?

5      A  No. Not that I can recall.

6      Q  When did you stop working for PTO?

7      A  November 19th, 2007.

8      Q  Okay. And the contract work and the

9  Howard University work that you just described, is that

10 ongoing? Is that something that you have done, and you

11 are continuing to do, as we speak?

12     A  I'm not doing any investigations yet.

13 But yes, I guess you could say.

14     Q  When you said that the Howard University

15 work is part time, could you give us an approximate

16 number of hours you're working on that.

17     A  Maybe four hours a week.

18     Q  Now, obviously, you indicated that you

19 worked for PTO up till November 19th, 2007. Is that the

20 date that you were removed from employment?

21     A  Yes.

22     Q  Then you indicated, I believe, that in

0040

1  changes?

2      A   Of course, some of them were completely
3  fine and did not need any changes, but I wanted to get
4  my work counted. I did not want to be removed, so I
5  wanted to know what he wanted, and he could not relate.
6  I asked him then, could someone else work with me, train
7  me, could I move to another technology center or another
8  supervisor, could I go to training since I was moving
9  from electrical to chemical, and he -- the answer to all
10 of that was met with a hostile no.

11     Q   What do you mean hostile no? How did
12 he --

13     A   He would talk down to me. He said, you
14 don't understand 102, 103. These are statutes of patent
15 law, and as I said, as I indicated, I have been working
16 for the patent office for 11 years. I had received
17 tuition to go to law school. I even told Mr. Meeks,
18 I've been to law school. I've graduated from law
19 school. I know how to interpret the statute. I've been
20 interpreting this statute for 11 years. What exactly is
21 it that you want? He was -- he talked to me as if I
22 were ignorant of patent examining.

0041

1      Q   Okay. So in terms of what you viewed as
2  hostile in his comments, it was comments where he
3  indicated you don't understand the ART or you don't
4  understand the statutes?
5      A   He was acting like I didn't understand
6  anything. He acted like I was completely ignorant, and
7  I was a GS-13 and had been a GS-13 for many, many
8  years. I became a GS-13, I believe, three years after I
9  got to the office in 1999. So I have been a GS-13 for
10 many years.
11     Q   Well, tell me what his hostile comments
12 were. You provided one example where he said that he
13 claimed that you didn't understand section 102, 103,
14 which are statutory provisions. Can you provide other
15 examples of hostile comments or comments that you
16 perceived as hostile?
17     A   Well, I wanted ART-specific training in
18 427, because, as I said, it had some inorganic and
19 organic chemistry, and I'm a general chemist, not an
20 organic or inorganic chemist. So when I requested these
21 kind of -- this training or some help from him, he was
22 like, just go to the stick, which is the service you can

0042

1  use, but as an examiner --

2      Q   Just for the purposes of this deposition,

3  can you describe what the STIC is. That's an acronym,

4  right?

5      A   I guess it's a service in the library

6  where searchers can look for things for you, but I'm an

7  examiner. I want to know how to search the cases for

8  myself. I don't want to rely on the STIC. I want to

9  learn how to do this myself. You have to wait for the

10 STIC people to do it like weeks. Whenever they can get

11 to it, and an examiner in 1600 that I went to for help

12 told me, he said, your supervisor knows how to search

13 these cases because I taught him, and yet -- and I said,

14 well, he's not helping me. So I had to go to someone in

15 1600 for help. He was -- so he was hostile.

16     Q   Okay. So for example, him directing you

17 to go to the STIC, you thought, which has some patent

18 research and information, you thought, was a hostile

19 comment to you?

20     A   Yeah. I came to him to learn how to do

21 this for myself, and not to -- just not a -- I know that

22 the STIC exists, and I know that they can help. I

0046

1   based on my level of intelligence, which I found
2   extremely offensive. I'm a chemist, I'm an educator,
3   and I'm a lawyer, and I didn't appreciate being talked
4   down to as if I were an uneducated, stupid woman.
5       Q   Okay. You said you're a lawyer. When
6   did you pass the bar exam?
7       A   I have a law degree. I haven't passed
8   the bar exam.
9       Q   Along the lines of what we just discussed
10  with race, sex, and age, did you ever hear Mr. Meeks
11  make any comment to you regarding -- a derogatory
12  comment to you regarding filing an EEO complaint or
13  engaging in EEO activity?
14      A   Well, when I told him that, how I was
15  treated by Mr. Baumeister --
16      Q   When did you tell him that?
17      A   I told him early on when, not long,
18  probably within a month after coming to the patent
19  office, returning to the patent office, and his comment
20  was --
21      Q   Wait. What did you tell him?
22      A   I told him everything that happened. I