```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

RENEE R. BERRY,                 )
                                )
     Plaintiff,                 )
                                )
          v.                    )     1:08cv697 (JCC)
                                )
GARY LOCKE, SECRETARY,          )
U.S. DEPT. OF COMMERCE,         )
                                )
     Defendant.                 )
```

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Defendant's Motion to Vacate the Order Granting Plaintiff *In Forma Pauperis* Status or to Dismiss the Complaint Pursuant to 28 U.S.C. § 1915, and on Defendant's related Motion to Stay the Defendant's Obligation to Answer, Move or Otherwise Respond to the Plaintiff's Complaint.  Also before the Court are the issues raised by the Court's Show Cause Order of March 6, 2009.  For the reasons stated below, the Court will grant Defendant's motion to dismiss pursuant to 28 U.S.C. § 1915, grant the motion to stay Defendant's obligation to respond to Plaintiff's complaint, and deny as moot Defendant's request to dismiss the case for failure to effect timely service.

### I.  Background

This action is one of several employment discrimination cases that Plaintiff Renee Berry ("Berry") filed in 2008 against

the Government.  Last year, the Court dismissed one of her claims in *Berry v. Gutierrez*, 587 F. Supp. 2d 717 (E.D. Va. 2008).  That case is currently on appeal before the Fourth Circuit (Case No. 09-1084).  Berry also brought claims in the Federal Circuit (*Berry v. Merit Sys. Protection Bd.*, 2009 WL 89668 (Fed. Cir. Jan. 15, 2009)) and the United States Court of Federal Claims (Civil Action No. 08-330-C).

The complaint filed in this action (the "Complaint") alleges that the United States Patent and Trademark Office (the "USPTO") discriminated against Berry, a patent examiner, by assigning to her cases that were "outside her area of expertise" while she was taking part in the "Partial Signatory Program."[1] (Compl. ¶ 9.)  Berry appears to be challenging an adverse determination by the Equal Opportunity Employment Commission (the "EEOC"); she asks the Court to order the EEOC to re-open the hearing process in one of the actions that she previously filed with that agency.  (Compl. 4.)

Berry, proceeding *in forma pauperis*, filed the Complaint on July 7, 2008.  The Court granted her leave to pursue her claim *in forma pauperis* on July 11, 2008.  After the

---

[1] As in her prior case before this Court, Berry has sued the Secretary of the Department of Commerce as the nominal defendant.  This case was originally captioned "Berry v. Carlos M. Gutierrez, Secretary, U.S. Department of Commerce."  Mr. Gutierrez is no longer Secretary of the Department of Commerce.  As of March 24, 2009, the new Commerce Secretary – and the proper nominal defendant here – is Gary Locke.  *See* Notice of April 2, 2009; Fed. R. Civ. P. 25(d).  The Court will refer to the defendant party in this matter as the "Government."

Government filed a Notice of Related Case stating that the instant action is related to Berry's other 2008 filing in the Eastern District, Civil Action No. 1:08cv459, it was transferred to the undersigned.  On March 6, 2009, the Court issued an order (the "Show Cause Order") requiring Berry to show cause why her case should not be dismissed for failure to serve the Government within 120 days of filing the Complaint.  Berry then moved unsuccessfully for a default judgment.  *See* Mag. Order of Mar. 17, 2009.

On March 20, 2009, in response to the Show Cause Order, Berry submitted a filing that again asked the Court to enter a default judgment in her favor (the "Response").  The Response, like Berry's earlier motion for a default judgment, claimed that the U.S. Marshals Service had already served the Government.  The Government opposed Berry's Response on March 31, 2009.  Berry filed a reply brief on April 17, 2009, pursuant to the Court's extension of the filing deadline.  *See* Order of Apr. 9, 2009.[2]

On March 10, 2009, the Government submitted two motions: a Motion to Vacate the Order Granting Plaintiff *In Forma Pauperis* Status or to Dismiss the Complaint Pursuant to 28 U.S.C. § 1915, and a Motion to Stay Defendant's Obligation to Answer, Move or Otherwise Respond to the Plaintiff's Complaint.  The

---

[2] In the same Order, the Court denied Berry's request for court-appointed counsel.

3

Government sent Berry the proper *Roseboro* notification. Her memorandum in opposition was due by April 21, 2009. Without seeking leave to file it past the deadline, Berry submitted an opposition memorandum on Thursday, May 14, just one day before the hearing on this matter.[3] The Show Cause Order and the Government's motions are before the Court.

## II. Analysis

A. <u>Motion to Vacate the Order Granting *In Forma Pauperis* Status or, Alternatively, Motion to Dismiss the Complaint</u>

The Government claims that Berry mis-represented her income level and the value of her assets on the Application to Proceed Without Payment of Fees and Affidavit that she filed in connection with this case (the "EDVA IFP Application"). The Government argues that Berry's level of income and the value of the assets she possesses are inconsistent with a finding of poverty. It asks the Court either to vacate its earlier order granting Berry's EDVA IFP Application or to dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(A), which requires courts to dismiss cases filed *in forma pauperis* if the applications for *in forma pauperis* status make untrue allegations of poverty.

---

[3] On the day of the hearing, she also moved for leave to amend the Complaint. That issue is currently before the Magistrate Judge.

### 1. Berry's Three *In Forma Pauperis* Applications

From May 2008 to January 2009, Plaintiff filed at least three lawsuits and two appeals in the federal courts. On May 5, 2008, Berry filed a complaint in the United States Court of Federal Claims and paid a filing fee of $250.00. (Def.'s Ex. 10.) On May 9, 2008, Berry filed a complaint in this Court, Civil Action No. 1:08cv459, and paid a filing fee of $350.00. (Def.'s Ex. 7.) After appealing a decision to the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") on May 5, 2008, Berry submitted, on May 20, a Motion and Designation for Leave to Proceed *In Forma Pauperis* (the "Federal Circuit IFP Application").[4] The Federal Circuit denied her application on May 29, 2008; Berry promptly paid the filing fee of $450.00. On July 11, 2008, she filed the EDVA IFP Application that is the subject of this motion. Finally, on January 12, 2009, Berry appealed this Court's decision in *Berry v. Gutierrez* to the Fourth Circuit and filed a Motion and Affidavit for Permission to Appeal *In Forma Pauperis* (the "Fourth Circuit IFP Application"). (Def.'s Ex. 7.) This Court granted that application on January 26, 2009.

The Government has moved to have Berry's IFP status in this case revoked after discovering that the financial information reported by Berry differed significantly between her

---

[4] Henceforth, the Court will abbreviate "*in forma pauperis*" to "IFP."

three IFP applications. The most striking differences were between the Federal Circuit IFP Application and the EDVA IFP Application, the latter filed just several weeks after the former was denied.

        2. <u>Differences Between the IFP Applications</u>

           a. *The Federal Circuit IFP Application*

On her Federal Circuit IFP Application, submitted on May 20, 2008, Berry reported monthly unemployment payments of $1,300 and a monthly income from real property, including rental income, of $2,115. (Def.'s Ex. 2.) She also listed income received for performing contract work for Adept Services, Inc. and First Info Tech. (Def.'s Ex. 2.) Berry stated that she had more than $7,000 in various checking and savings accounts. She also reported ownership of three homes: (1) 2827 Otis St., N.E. ("Otis Street House"), with a reported value of $350,000.00; (2) 47 Sheridan Street, N.E., with a reported value of $250,000.00 ("Sheridan Street House"); and (3) 804 Quince Orchard ("Quince Orchard House"), with a reported value of $150,000.00. She also reported owning a Jeep worth $20,000.00. (Def.'s Ex. 2.)

District of Columbia Taxpayer Service Center tax records show a Ms. Bessie B. Berry, Berry's mother, as the owner of the Otis Street House, and report its value as $582,790.00. (Def.'s Ex. 3.) The records show Berry as the owner of the other two houses. They report the value of the Sheridan Street House

as $356,940.00 and the value of the Quince Orchard House as $145,000.00.  (Def.'s Exs. 4-5.)

After the Federal Circuit considered the information Berry provided and denied her IFP application, Berry promptly paid the $450.00 filing fee.  (Def.'s Ex. 1.)

### b. *The EDVA IFP Application*

Berry's EDVA IFP Application, filed less than two months after the Federal Circuit IFP Application, contains a number of omissions and provides a strikingly different picture of Berry's financial circumstances.  In it, Berry stated that she was "essentially unemployed" and that she had, in the past nine months, earned just $2,800.00.  (Dkt. 2.)  She admitted owning a Jeep and "a house" but did not include an estimated value for either; she also estimated that she had $500.00 in her bank accounts.  Berry noted that she received rental payments in the amount of $1,415.00 per month but stated that her mortgage payments were $1,774.00 per month.  (Dkt. 2.)

Overall, Berry's EDVA IFP Application painted a picture of someone who was not receiving income sufficient to support herself, whose only assets were a house and a vehicle, and who was overwhelmed with debt.  While it may be true that Berry's financial circumstances were less than optimal when she filed the IFP application, the picture she presented was highly inaccurate.

Berry did not list the Virginia unemployment payments she received under a question that asked about other sources of income. She listed having "a house" as an asset even though tax records show that she owned at least two houses, together valued at more than $500,000.00. That particularly glaring omission also directly contradicted the Federal Circuit IFP Application, in which she claimed to own three houses worth approximately $750,000.00. The amount of rental income she reported was also significantly less than the amount reported just weeks prior.

### c. *The Fourth Circuit IFP Application*

Berry's Fourth Circuit IFP Application, submitted on January 12, 2009, also contains differing information about her income and net worth. She again claimed to own only one home, but this time valued it at $500,000.00. She valued her Jeep at $8,000.00 – down from the $20,000.00 she had claimed in May 2008. Berry also stated that her monthly expenses exceeded her monthly income and that she expected to file for bankruptcy. (Def.'s Ex. 8.) She again failed to include unemployment payments as a source of income for any of the 12 months preceding the application.

### d. *October 30, 2008 Deposition*

On October 30, 2008, Berry was deposed under oath as part of another Equal Employment Opportunity case that she filed, Case No. 570-2008-00493X. In the deposition, she testified that

8

she had a law degree, that she had been employed through Howard University as a chemistry teacher for Upward Bound students, and that she had worked as a contract EEO investigator for the United States Department of Justice.  (Def.'s Ex. 9 at 40, 9-11.)  It is unclear from the face of her EDVA IFP Application whether any of the income she reported there was tied to her job as a contract investigator for the Department of Justice or her work for Howard University.

### e. Opposition Brief and Hearing

Berry submitted an opposition brief on the day before the hearing, twenty-three days after the filing deadline passed. The Government, however, did not move to strike the brief, probably because the information Berry proffered as excusing her IFP omissions only served to clarify them.  For the same reason, the Court finds it appropriate to consider Berry's late-filed submission.

Berry explains the difference in reported rental income on the Federal Circuit and the EDVA IFP Applications by claiming that she lost a tenant in June 2008, between filing the applications, causing her to lose $600.00 per month – temporarily, one assumes, given the subsequent rise in rental income reported on her January 2009 IFP application.  The EDVA IFP Application, however, asks applicants to "describe . . . each source of money" received in the past 12 months, and requires

them to "state the amount received and what you expect you will continue to receive." (Def.'s Ex. 6.) Berry's statement on the EDVA IFP Application did not indicate that she had, in the previous twelve months, received more than the $1,415.00 per month that she reported.

Similarly, Berry attempts to minimize the omission of her unemployment payments by noting that she did not receive unemployment "when she received payment for contract EEOC investigations." (Pl.'s Opp'n 4.) But not being entitled to a handful of unemployment checks does not excuse failing to report an otherwise regular stream of payments. Berry's claim that she correctly estimated her unemployment compensation and wages on the Fourth Circuit IFP Application, completed approximately six months after the IFP application at issue here, only serves to highlight how woefully incomplete the EDVA IFP Application was.

Crucially, Berry also acknowledged in her opposition and at the hearing that, along with her parents, she owns the Otis Street House. Thus, Berry applied for IFP status although she owned or part-owned three properties worth between $750,000.00 (her estimate) and $1,084,730.00 (District of Columbia tax estimate). Berry also claims to have spent more than $7,000 on renovations made to the Otis Street House in June 2008. (Pl.'s Opp'n 4.)

### 3. Proceeding *In Forma Pauperis*

Federal courts can allow a litigant to prosecute or defend a civil action without paying the usual required fees if the litigant submits an affidavit containing a statement of the litigant's assets and demonstrating that he or she cannot afford to pay the required fees. 28 U.S.C. § 1915(a)(1). An impoverished plaintiff does not have to prove that he or she is "absolutely destitute to enjoy the benefit of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 355 U.S. 331, 339 (1948). The individual seeking to proceed IFP need only show indigence or poverty sufficient to demonstrate his or her inability to provide for the necessities of life while paying the costs of litigation. *Id.* at 339-40.

If a court determines that the allegation of poverty made in an IFP application affidavit is untrue, however, it "shall dismiss the case." 28 U.S.C. § 1915(e)(2).[5] Courts that have considered the statute have held that dismissal is mandatory when a court finds that allegations of poverty in an IFP application are untrue; the court also has the discretion to dismiss the case with prejudice. *In re Sekendur*, 144 Fed. Appx. 553, 554-55 (7th Cir. 2005) (citing *Thomas v. Gen. Motors*

---

[5] The mandatory "shall" was inserted as a result of the changes made to § 1915 by the Prison Litigation Reform Act, Pub. L. No. 104-134 §§ 801-10, 110 Stat. 1321 (1996). Prior to 1996, dismissal was at the court's option. *See Pelmer v. Dean*, 562 F. Supp. 2d 1006, 1007-08 (N.D. Ill. 2008); *see also Hinton v. Hearns*, 2008 WL 2662974, at *1 (E.D. Va. July 2, 2008).

*Acceptance Corp.*, 288 F.3d 305, 306, 308 (7th Cir. 2002); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998)); *see also Lee v. McDonald's Corp.*, 231 F.3d 456, 458-59 (8th Cir. 2000) (holding that dismissal under § 1915 must be based on whether the allegations of poverty were actually false, not on whether the allegations included good faith misstatements).

"Section 1915(e)(2)(A) requires dismissal if [IFP application] omissions [are] material"; omissions are material when "the omitted assets and income would have enabled [the plaintiff] to pay the filing fee." *Torain v. Ameritech Advanced Data Servs. of Ill., Inc.*, 2009 WL 899958, at *1 (7th Cir. 2009). The Court finds that Berry's omissions of several sources of income and of substantial assets are clearly material.  If Berry had made the proper disclosures that she was obligated to make, the Court – like the Federal Circuit – would have refused to grant her IFP status.  *See Pelmer*, 562 F. Supp. 2d at 1008.

          4. <u>Berry's Allegations of Poverty Were Untrue</u>

Berry made numerous material misstatements and omissions in her EDVA IFP Application.  She did not reveal that, in the previous six months, she had been receiving regular unemployment checks from the Commonwealth of Virginia.  While she acknowledges receiving $1,415.00 in rental income (presumably monthly) on her EDVA IFP Application, the Federal Circuit IFP Application, filed just weeks earlier, and the Fourth Circuit IFP

12

Application, filed approximately six months later, list her monthly income from rentals at $2,115.00 and $2,000.00, respectively. The temporary loss of a tenant, which Berry claims affected her monthly rental income, does not excuse her failure to properly report the income she made before losing the tenant.

Most importantly, Berry did not reveal the fact that she owned one other home and was a part-owner of a third home. Tax documents reveal that she is the record owner of two homes that she had valued at $400,000.00 just weeks earlier and that are valued at more than $500,000.00 for tax purposes. Berry also did not claim an ownership interest in the Otis Street House on her EDVA IFP Application, which she valued at $350,000.00 in her Federal Circuit IFP Application and which tax records valued at nearly $600,000.00. At the time Berry filed the application, her monthly income over the past 12 months had been substantially higher than the total of $2,800.00 she claimed to have earned and the monthly rent she claimed to have received, and she owned a substantial amount of unreported assets.

The omission of those assets was critical. Berry is the owner or part-owner of several pieces of real estate worth hundreds of thousands of dollars. Even if those assets were not liquid, and even if Berry found herself in straitened financial circumstances due to other obligations, the benefit of filing IFP was not intended to allow individuals with more than half a

million dollars in assets – at least – to avoid paying a filing fee of $350.00.  In filing an IFP affidavit and signing it under penalty of perjury, Berry swore that she was so destitute that it would not be reasonable to expect her to pay the filing fee.  By omitting the substantial assets that she owns from the application, Berry cast the burden of payment onto the public.  That action took advantage of the Court and the public purse.

The Court also notes that Berry paid the filing fees in two of the three cases she filed in May 2008.  When the Federal Circuit turned down her IFP request, she promptly paid the filing fee in that case as well.  Berry has not indicated that she had any difficulty making those payments.  In fact, she paid the Federal Circuit filing fee just five weeks before filing the instant suit and the EDVA IFP Application.  That she may have been short on cash at the time of filing did not entitle her to swear that she was impoverished.

Finally, the timing of the IFP requests is suspicious.  Just weeks after the Federal Circuit turned down her IFP application, Berry filed a new application in which she appeared substantially poorer.  One fair inference is that Berry decided not to make the same mistake twice.  It was Berry's decision to file numerous federal claims, in several fora, in 2008.  If, halfway through her barrage of litigation, Berry decided that the cost of her filings should be borne by the public rather than by

herself, then her IFP application in this Court was made in bad faith.  Even if it was not the result of bad faith, however, the Court cannot sanction the material omissions that led it to grant IFP status to an individual holding such substantial real assets.

Berry has attempted to paint the Government's motion to dismiss as "unconscionable."  (Pl.'s Opp'n 6.)  As a last-ditch effort to excuse her behavior, she claims that she arrived at the clerk's office to file her suit near the close of business and so was pressed for time.  But the IFP affidavit was not a mere formality.  And Berry, who holds a law degree, cannot be excused for treating it as such.

### 5. Berry's Case Must Be Dismissed

The Government asks the Court either to vacate the IFP order or to dismiss the case pursuant to 28 U.S.C. § 1915.  The Court notes that, because the case is styled as a Title VII case and more than 90 days have passed since the EEOC took action on the case, dismissing it without prejudice may operate as a de facto dismissal with prejudice.  *See Pelmer*, 562 F. Supp. 2d at 1008.  Section 1915, however, requires dismissal, not a vacating of the IFP order, if the Court finds that the allegations of poverty were untrue.  28 U.S.C. § 1915(e)(2)(A) ("[T]he court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue."); *Pelmer*, 562 F. Supp. 2d at 1008.  Because the Court finds that Berry filed a

materially misleading IFP application that would not have been granted had she made a full and honest disclosure of her assets, it will dismiss her case without prejudice pursuant to 28 U.S.C. § 1915.

Even if Berry's misstatements were made in good faith, her case is subject to dismissal because her allegation of poverty was untrue. *See Lee v. McDonald's Corp.*, 231 F.3d 456, 458-59 (8th Cir. 2000). The IFP inquiry looks at net worth, not just short-term financial difficulties. It was designed to "weed out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth." *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990) (citation omitted); *see also Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997). The substantial value of Berry's assets excludes her from the group that Congress intended the IFP statute to benefit.

Other courts have dismissed IFP claims when the plaintiff mis-stated or underestimated real estate assets. In *Johnson v. Spellings*, the plaintiff did not list substantial real property assets. 579 F. Supp. 2d 188, 190 (D. D.C. 2008). She claimed that she did not know that the assets were hers because she did not understanding her joint tenancy rights; the court, however, found her excuses weak and dismissed her case. *Id.* Berry cannot offer even so half-hearted an excuse: she listed the

16

missing houses on another IFP application just weeks earlier.  In *Mullins v. Hallmark Data Sys., LLC*, a case factually similar to the one at bar, the court found a plaintiff's IFP application to be perjurious and dismissed her case when it discovered that she had "incorrectly omitted information regarding almost $20,000 in salary and interests in certain real property."  511 F. Supp. 2d 928, 930 (N.D. Ill. 2007).  Berry's omissions were significantly more substantial.

Finally, Berry cannot claim to be ignorant of the importance of her sworn declaration.  Above the signature line, the EDVA IFP Application states: "I declare under penalty of perjury that the above information is true and correct."  Berry, as a law school graduate, had more reason to understand the import of that statement than, the Court presumes, most other IFP applicants.[6]

    B. <u>Request to Stay the Government's Obligation to Respond to the Complaint</u>

The Government asks the Court to stay its obligation to answer or otherwise respond to Berry's Complaint pending resolution of the IFP issue.  Because the Court is dismissing Berry's case, the request will be denied as moot.

---

[6] The Government has submitted deposition testimony in which Berry states that she has graduated law school and is "a lawyer," although she has not passed the bar exam.  (Def.'s Ex. 9.) (deposition in EEOC Case No. 570-2008-00493X, *Renee R. Berry v. Carlos Gutierrez*).

17

    C. <u>The Court's Show Cause Order</u>

On March 6, 2009, after it became clear at a status conference that Berry had not yet served the defendant in this case, the Court issued a Show Cause Order (the "Show Cause Order") requiring Berry to show cause for her failure to serve the Government within 120 days of filing the Complaint.

The Government filed a memorandum supporting dismissal without prejudice for Berry's failure to effect timely service. The Government's request for dismissal, however, is moot in light of the Court's decision to dismiss Berry's case pursuant to § 1915.

### III. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss pursuant to 28 U.S.C. § 1915, grant the motion to stay Defendant's obligation to respond to Plaintiff's complaint, and deny as moot Defendant's request to dismiss the case for failure to effect timely service.

An appropriate Order will issue.


June 5, 2009                                            /s/
Alexandria, Virginia                 James C. Cacheris
                                      UNITED STATES DISTRICT COURT JUDGE